BETH F.[1],

                                                    Plaintiff,

              v.                                    5:17-CV-723
                                                    (ATB)

COMMISSIONER OF SOCIAL SECURITY,

                                                    Defendant.

HOWARD D. OLINSKY, ESQ., for Plaintiff
JASON P. PECK, Special Asst. U.S. Attorney for Defendant

ANDREW T. BAXTER, U.S. Magistrate Judge

## MEMORANDUM-DECISION and ORDER

This matter was referred to me, for all proceedings and entry of a final judgment,

pursuant to the Social Security Pilot Program, N.D.N.Y. General Order No. 18, and in

accordance with the provisions of 28 U.S.C. § 636©), Fed. R. Civ. P. 73, N.D.N.Y.

Local Rule 73.1 and the consent of the parties. (Dkt. Nos. 4, 5).

## I.    PROCEDURAL HISTORY

On March 28, 2014, plaintiff filed an application for Supplemental Security

Income ("SSI"), alleging disability beginning March 6, 2014. (Administrative

Transcript ("T.") 175-80, 205). Plaintiff's March 28, 2014 "Disability Report"

indicated that plaintiff alleged disability based upon back pain, arthritis, and chronic

---

[1] In accordance with recent guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in June 2018 in order to better protect personal and medical information of non-governmental parties, this Memorandum-Decision and Order will identify the plaintiff using only her first name and last initial.

Hepatitis C. (T. 205). The application was denied initially on May 8, 2014. (T. 77-80). Plaintiff requested a hearing, which was held before Administrative Law Judge ("ALJ") Jennifer Gale Smith on March 10, 2016, at which plaintiff and Vocational Expert ("VE") Linda Vause testified. (T. 31-68). On March 29, 2016, ALJ Smith issued a decision denying plaintiff's application. (T. 10-18). Plaintiff requested Appeals Council review. (T. 174). The ALJ's decision became the Commissioner's final decision when the Appeals Council denied plaintiff's request for review on December 7, 2017. (T. 1-3).

## II.   GENERALLY APPLICABLE LAW

### A.   Disability Standard

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. sections

404.1520 and 416.920, to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520, 416.920. The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that her impairment prevents her from performing her past work, the burden then shifts to the Commissioner to prove the final step. *Id.*

### B. Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supported the decision. *Selian v. Astrue*, 708 F.3d at 417; *Brault v. Soc. Sec. Admin, Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera v. Astrue*, 697 F3d 145, 151 (2d Cir. 2012). It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Id.* However, this standard is a very deferential standard of review " – even more so than

the 'clearly erroneous standard.'" *Brault*, 683 F.3d at 448.

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner, if the record contains substantial support for the ALJ's decision. *Id*. *See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record. *See, e.g., Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony). However, the ALJ cannot "'pick and choose' evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

## III.  FACTS

As of the date of the March 10, 2016 administrative hearing, plaintiff was 53 years old. (T. 37). She resided with her boyfriend, along with their three pets.[2]  (T. 43). Plaintiff completed the 11th grade and subsequently obtained her GED. (T. 37).

---

[2]Plaintiff testified that she cared for their dog and two cats with the help of her boyfriend. (T. 43-44). According to her April 9, 2014 Function Report, plaintiff took on the responsibilities of feeding the animals, letting them outside, and emptying the cats' litter box. (T. 215).

Plaintiff was most recently employed as a cleaner with Servpro.  (T. 38-39).  She was terminated from Servpro in March 2014.[3]  (T. 39).  Plaintiff was previously employed as a part-time cashier with the Rescue Mission.  (T. 38).  Plaintiff was not employed for a number of years prior to working at the Rescue Mission.  *Id.*

In 2010, plaintiff underwent thoracic spinal surgery from T11 to L2.  (T. 35-36, 44). In September 2013, while working for Servpro, plaintiff "twisted her back."  (T. 39-41).  Plaintiff testified that as a result of her back condition, she had a difficult time "bending and lifting."  (T. 42).  She experienced numbness and pain in her back, as well as nerve pain in her legs.  (T. 42, 44).  Her pain radiated from the middle of her back to her tailbone.  (T.  46).  Plaintiff testified that she retained the ability to lift 10 to 20 pounds.  (T. 43).  She could stand for a couple hours before needing to rest, and could walk for 15-30 minutes before she experienced discomfort in her legs.  *Id.*  Plaintiff also testified that she could sit for several hours before needing to switch positions.  (T. 43).  She could squat, but had to lean on something to pull herself up.  (T. 46).  She could bend at the waist five times a day, up to a 90 degree angle.  (T.  63-64). She became "out of breath" when she bent over.  (T. 47).

Plaintiff testified that she could dress herself, however she had to sit down to put on her pants and tie her shoes.  (T. 48).  Although her boyfriend usually "carried it down," plaintiff could do the laundry; she could also clean the dishes and vacuum.  *Id.*  Plaintiff testified that her boyfriend did the grocery shopping, because it was too much

---

[3]Plaintiff testified that she was let go when her employer hired another individual to replace her, however it is unclear whether plaintiff's termination was directly related to her physical limitations.  (T. 39-40).

walking for her.[4] *Id.* Plaintiff further testified that her back and leg pain woke her every three hours at night. (T. 47). Walking did not alleviate the leg pain, which she described as tingling, sharp, and cramping. (T. 47-48). In addition to pain medication, plaintiff testified that she used a TENS unit in an effort to relieve her back pain. (T. 47).

Plaintiff also testified that her asthma was "not too good lately." (T. 45). At the time of the administrative hearing she was on antibiotics for bronchitis, which she stated she suffered from regularly. (T. 46). Plaintiff testified that she was a current smoker, but had decreased the amount of cigarettes she smoked per day. (T. 45). Although her medical providers expressed concern, she had not been diagnosed with COPD. (T. 45-46). Her asthma was aggravated by perfumes and other odors, the cold, and rain. (T. 50).

Plaintiff was previously diagnosed with Hepatitis C, for which she underwent treatment. (T. 42). She worked full-time throughout her treatment, obtained good results, and was not experiencing any symptoms from the Hepatitis C at the time of the administrative hearing. *Id.*

During the hearing, the ALJ, with input from plaintiff's counsel, posed a series of hypothetical questions to the VE, asking if a claimant with an RFC for light work, with various additional limitations, could perform plaintiff's past work, or other jobs in the national economy. (T. 53-61). The final hypothetical, which tracked the RFC ultimately reflected in the ALJ's decision, included a prohibition on reaching overhead with either

---

[4]The court notes that, in her April 9, 2014 Function Report, plaintiff indicated that she shopped weekly for food and personal items, for "about an hour" at a time. (T. 218).

hand. This hypothetical also assumed limitations on standing and walking that were not consistent with an RFC for the full range of light work–standing and walking, each for two hours in a workday, for one hour at a time–but posited an ability to sit for eight hours during a workday, two hours at a time. (T. 57-58). Finally, the VE was asked to consider the additional limitations that the claimant should avoid concentrated exposure to respiratory irritants and extreme hot and cold temperatures, and should not work at unprotected heights or around moving mechanical parts. (T. 59). The VE opined that the hypothetical claimant could not perform plaintiff's prior work (T. 55), but that the limitations in the final hypothetical would permit the claimant to perform three jobs–shipping-and-receiving clerk, furniture rental consultant, and counter clerk (T. 59-60).

The ALJ asked if the VE's opinion was consistent with the Dictionary of Occupational Titles (DOT). (T. 59). The VE stated that her testimony was not consistent with the DOT; however it was based on her own experience and understanding of how the occupations could be performed sitting or standing. *Id.* The VE further testified that she had observed the occupations of Furniture Rental Consultant and Counter Clerk performed, and based on her observations the plaintiff could perform these jobs with the limitations expressed in the hypothetical. (T. 60). The VE further testified that she had previously placed individuals in the position of Counter Clerk. *Id.* Finally, the VE testified that she had assessed the identified occupations and analyzed how they were performed and "how the job is set up." (T. 61). She believed that these occupations could be performed with the limitations

identified by the ALJ, with "no erosion." (T. 61, 67).

The VE further testified that the identified occupations would not be available if the plaintiff required a 7-8 minute break every hour. (T. 62). The plaintiff would further not be able to perform the identified occupations if she were absent from work two days per month on a recurring basis. *Id.* The plaintiff would not be able to engage in competitive employment if she were off task 20% of the workday. (T. 63).

The ALJ's decision and the parties' pleadings provide a detailed statement of the medical evidence of record. The court will discuss the relevant details of the medical evidence below, in addressing the issues raised by plaintiff.

## IV.  THE ALJ'S DECISION

After reciting the procedural history and applicable law, the ALJ first found that plaintiff had not engaged in substantial gainful employment since plaintiff's application date of March 11, 2014.[5] (T. 12). At step two of the sequential analysis, the ALJ found that plaintiff had the following severe impairments: status post thoracic spinal surgery, degenerative changes of the thoracic and lumbar spine, and asthma. *(Id.)* The ALJ further found that plaintiff's Hepatitis C did not rise to the level of a severe impairment under the Act. *(Id.)*

The ALJ also found that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a Listed Impairment at step

---

[5]It is unclear how the ALJ determined plaintiff's application date to be March 11, 2014. According to the administrative record, plaintiff's application for SSI benefits was submitted on March 28, 2014. (T. 175). Her Disability Report indicates an alleged onset date of March 6, 2014. (T. 201). Regardless, these inconsistencies do not affect the following analysis by the court.

three of the sequential analysis. (T. 12-13). In making this decision, the ALJ

considered Listings 1.04 (Disorders of the Spine) and 3.03 (Asthma). (T. 13).

The ALJ then found that plaintiff had the residual functional capacity to perform

"less than light work," indicating the following limitations:

> [plaintiff] can frequently lift and carry up to ten pounds;
> occasionally lift eleven to twenty pounds; and can sit for a total
> of eight hours in an eight-hour day, for two hours at a time; she
> can only stand for two hours in an eight-hour day, for one hour
> at a time; and walk for two hours in an eight-hour day, for one
> hour at a time. The [plaintiff] is right hand dominant. The
> [plaintiff] should not reach overhead and can occasionally reach
> in all other directions. The [plaintiff] can frequently handle,
> finger and feel. The [plaintiff] can occasionally push and pull
> up to the weight limits contained in this residual functional
> capacity. The [plaintiff] can occasionally use foot controls. The
> [plaintiff] should not climb ladders, ropes and scaffolds; kneel;
> crouch; balance; and crawl. The [plaintiff] can occasionally
> climb ramps and stairs; and stoop. The [plaintiff] should not
> work at unprotected heights and around moving mechanical
> parts of equipment. The [plaintiff] should avoid concentrated
> exposure to dust; odors; fumes and gases; and extreme hot and
> cold temperatures. The [plaintiff] can occasionally operate a
> motor vehicle.

(Id.) In making this RFC determination, the ALJ stated that she considered all of the

plaintiff's symptoms, and the extent to which those symptoms could "reasonably be

accepted as consistent with the objective medical evidence and other evidence, based

on the requirements of 20 C.F.R. § 416.929" and Social Security Rulings ("SSR")

96-4p and 16-3p. (Id.) The ALJ stated that she considered opinion evidence in

accordance with the requirements of 20 C.F.R. § 416.927 and SSRs 96-2p, 96-5p,

96-6p and 06-3p. (Id.)

The ALJ also found that plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the plaintiff's statements as to the intensity, persistence and limiting effects of those symptoms were not consistent with the evidence because they were unsupported by competent medical evidence and opinion and contradicted by other evidence. (T. 14). The ALJ considered the medical evidence as a whole, discussing plaintiff's impairments and the medical providers who treated her. (T. 14-15). The ALJ stated that her residual functional capacity assessment was supported by the "objective medical evidence of record, the claimant's activities of daily living and the opinion of [consultative examiner] Dr. Lorensen." (T. 16).

After considering the evidence and plaintiff's RFC, the ALJ found at step four that plaintiff could not perform any of her past relevant work. *(Id.)* The ALJ then turned to step five of the sequential analysis. (T. 16-17). The ALJ acknowledged that the plaintiff's ability to perform unskilled light work had been impeded by additional limitations. (T. 17). To determine the extent to which these limitations eroded the unskilled light occupational base, the ALJ considered the testimony from the VE. *(Id.)* The VE testified that there were several jobs which could be performed by a person of plaintiff's age, education, and work experience, with the RFC for light work as modified by the ALJ, including furniture rental consultant, shipping-and-receiving weigher, and counter clerk. (Id.) The ALJ further indicated that although the VE's

testimony was inconsistent with the information contained in the DOT, the VE had

observed the jobs performed and analyzed them; it was the VE's opinion that the

occupations could be performed with the limitations identified in the RFC. (T. 17-18).

The ALJ reiterated the VE's opinion that there would be no erosion of the identified

job base. (T. 18). Thus, because plaintiff was capable of performing jobs which

existed in significant numbers in the national economy, the ALJ found that plaintiff

was not disabled. *(Id.)*

## V.   ISSUES IN CONTENTION

Plaintiff raises the following arguments:

1.   The RFC is not supported by substantial evidence, and the overall medical opinion evidence of record indicates plaintiff cannot perform sedentary work.

2.   The ALJ's Step Five determination is not supported by substantial evidence.

(Plaintiff's Brief ("Pl.'s Br.") at 1, Dkt. No. 9). Defendant argues that the RFC

determination by the ALJ is "supported by substantial evidence and is legally correct."

(Defendant's Brief ("Def.'s Br.") at 2, Dkt. No. 14). For the following reasons, this

court agrees with defendant and will affirm the Commissioner's decision, dismissing

the complaint.

**DISCUSSION**

## VI.   RFC

### A.   Legal Standards

#### 1.   RFC

Residual functional capacity ("RFC") is "what [the] individual can still do despite his or her limitations.  Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. . . ."  A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule.  *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, at *2)).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations.  20 C.F.R. §§ 404.1545, 416.945.  *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999).  An ALJ must specify the functions plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities.  *(Id.)* (citing, *inter alia*, *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984)).  RFC can only be established when there is substantial evidence of each physical requirement listed in the regulations.  *(Id.)* (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)).  The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-

medical evidence. *Trail v. Astrue*, 5:09-CV-1120 (DNH/GHL), 2010 WL 3825629, at

*6 (N.D.N.Y. Aug. 17, 2010) (citing SSR 96-8p, 1996 WL 374184, at *7).

### 2. Treating Physician

"Although the treating physician rule generally requires deference to the medical

opinion of a claimant's treating physician, . . . the opinion of the treating physician is

not afforded controlling weight where . . . the treating physician issued opinions that

are not consistent with other substantial evidence in the record . . . ." *Halloran v.*

*Barnhart*, 362 F.3d 28, 32 (2004); *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir.

2002); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). The ALJ must properly analyze

the reasons that a report of a treating physician is rejected. *Halloran v. Barnhart*, 362

F.3d at 32-33. An ALJ may not arbitrarily substitute his own judgment for competent

medical opinion. *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999).

### 3. Step Five Analysis

At step five of the disability analysis, the burden shifts to the ALJ to demonstrate

that there is other work in the national economy that plaintiff can perform. *Poupore v.*

*Astrue*, 566 F.3d 303, 306 (2d Cir. 2009). "Work which exists in the national

economy" means work existing in significant numbers "either in the region where the

individuals live or in several regions of the country." *McCusker v. Comm'r of Soc. Sec.*,

No. 1:13-CV-1074, 2014 WL 6610025, at *3 (N.D.N.Y. Nov. 20, 2014) (quoting SSR

82-53, 1982 WL 3134, at *3 (1982) (internal quotation marks removed).

In the ordinary case, the ALJ carries out this fifth step of the sequential

disability analysis by applying the applicable Medical-Vocational Guidelines ("the

Grids"). *(Id.)* The Grids divide work into sedentary, light, medium, heavy, and very heavy categories, based on the extent of a claimant's ability to sit, stand, walk, lift, carry, push, and pull. 20 C.F.R. Pt. 404, Subpt. P, App. 2; *Zorilla v. Chater*, 915 F. Supp. 662, 667 n.2 (S.D.N.Y. 1996). *See also* 20 C.F.R. §§ 404.1567 & 416.967. Each exertional category of work has its own Grid, which then takes into account the plaintiff's age, education, and previous work experience. *(Id.)* Based on these factors, the Grids help the ALJ determine whether plaintiff can engage in any other substantial work that exists in the national economy. *(Id.)*

"Although the grids are 'generally dispositive, exclusive reliance on [them] is inappropriate' when they do not fully account for the claimant's limitations." *Martin v. Astrue*, 337 F. App'x 87, 90 (2d Cir. 2009) (citation omitted). When significant nonexertional impairments[6] are present or when exertional impairments do not fit squarely within Grid categories, the testimony of a vocational expert is required to support a finding of residual functional capacity for substantial gainful activity. *McConnell v. Astrue*, 6:03-CV-0521 (TJM), 2008 WL 833968, at *21 (N.D.N.Y. Mar. 27, 2008) (citing, *inter alia*, *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986).

If the ALJ utilizes a VE at the hearing, the VE is generally questioned using a hypothetical question that incorporates plaintiff's limitations. *See Aubeuf v. Schweiker*, 649 F.2d 107, 114 (2d Cir. 1981). Although the ALJ is initially responsible for determining the claimant's capabilities based on all the evidence, *see Dumas v.*

---

[6] A "nonexertional" limitation is a limitation or restriction imposed by impairments and related symptoms, such as pain, that affect only the claimant's ability to meet the demands of jobs other than the strength demands. 20 C.F.R. §§ 404.1569a(c), 416.969a(c).

*Schweiker*, 712 F.2d 1545, 1554 n.4 (2d Cir. 1983), a hypothetical question that does

not present the full extent of a claimant's impairments cannot provide a sound basis for

vocational expert testimony. *See De Leon v. Sec'y of Health and Human Servs.*, 734

F.2d 930, 936 (2d Cir. 1984); *Lugo v. Chater*, 932 F. Supp. 497, 503-04 (S.D.N.Y.

1996). Conversely, the ALJ may rely on a VE's testimony regarding the availability of

work as long as the hypothetical facts the expert is asked to consider are based on

substantial evidence and accurately reflect the plaintiff's limitations. *Calabrese v.

Astrue*, 358 F. App'x 274, 276 (2d Cir. 2009). Where the hypothetical is based on an

ALJ's RFC analysis, which is supported by substantial facts, the hypothetical is proper.

 (Id.) at 276-277.

### B.    Medical Evidence

As previously discussed, the ALJ concluded that plaintiff retained the residual

functional capacity to perform light work, with additional limitations. In reaching the

RFC determination, the ALJ gave "partial weight" to the opinion of Elke Lorensen,

M.D., who performed a consultative examination of plaintiff on June 3, 2015. (T. 15,

315-18). Dr. Lorensen noted that plaintiff's activities of daily living included cooking

and cleaning daily, laundry and shopping once a week, showering and dressing herself

daily, watching TV, listening to the radio, reading, going to her family's house, and

socializing. (T. 315). Upon examination, Dr. Lorensen noted plaintiff appeared to be

in no acute distress, had a normal gait, and did not require help changing or getting on

and off the examination table. (T. 316). Dr. Lorensen further indicated that plaintiff

exhibited full cervical flexion, extension, lateral flexion bilaterally, and full rotary

movement bilaterally. (T. 317). Lumbar flexion was 50 degrees, extension and lateral flexion 20 degrees bilaterally, with full rotary movement bilaterally. *(Id.)* Straight Leg Raise Test was negative bilaterally. *(Id.)* Hip and knee flexion were 90 degrees bilaterally, with full range of motion of the ankles. *(Id.)* Plaintiff exhibited full strength in the upper and lower extremities, and full grip strength. *(Id.)* Based on her examination, Dr. Lorensen opined that plaintiff had "no gross limitations to sitting, standing, walking, handling small objects with the hands. There are moderate restrictions to bending, lifting, reaching and squatting." *(Id.)*

In addition to her June 3, 2015 Internal Medicine Examination report, Dr. Lorensen also prepared a June 9, 2015 Medical Source Statement of Ability to do Work-Related Activities (Physical) ("MSS"). (T. 319-25). In the MSS, Dr. Lorensen opined plaintiff could lift and carry up to 10 pounds frequently and up to 20 pounds occasionally. (T. 319). She further indicated plaintiff could sit for two hours at a time, for a total of eight hours in an eight-hour work day; stand for one hour at a time, for a total of two hours in an eight-hour work day; and walk for one hour at a time, for a total of two hours in an eight-hour workday. (T. 320). Plaintiff could never reach overhead; but could occasionally reach in all other directions and push/pull; and could continuously handle, finger, and feel. (T. 321). Dr. Lorensen further opined that plaintiff could never perform any of the several postural activities, including climbing stairs and ramps, climbing ladders or scaffolds, balancing, stooping, kneeling, crouching, or crawling. (T. 322). Plaintiff could never tolerate exposure to unprotected heights or moving mechanical parts. (T. 323). She could occasionally

tolerate operating a motor vehicle, humidity and wetness, dust, odors, fumes and pulmonary irritants, extreme cold and heat, and vibrations. (T. 323).

The ALJ acknowledged Dr. Lorensen was an acceptable medical source, and afforded her opinion "partial weight . . . to the extent that it is supported by the record[. . . however t]he findings that are unsupported are rejected." (T. 15). In supporting the weight afforded to Dr. Lorensen's opinion, the ALJ pointed to other evidence in the record indicating plaintiff retained the ability to climb stairs, and that she was able to bend to 90 degrees. (T. 15-16). The ALJ indicated that, based on such evidence, it "seem[ed] that Dr. Lorensen's prohibition on all postural activities is inconsistent with the [plaintiff's] activities of daily living." (T. 16). The ALJ further noted that "the conclusions which Dr. Lorensen reached in [her Internal Medicine Examination report] are vastly different from the findings she made in [her MSS]." (T. 16).

The ALJ also discussed a partial report of a functional capacity examination prepared by a physical therapist.[7] (T. 15, 352-353). The results of the FCE indicated that plaintiff was able to frequently lift/carry ten pounds and lift/carry a maximum of twenty pounds. (T. 352). It further indicated plaintiff could stand for two hours in a day, walk for two hours in a day and sit for less than six hours in a day. *(Id.).* Plaintiff could push/pull with bilateral upper extremities and push with bilateral lower extremities. *(Id.).* Plaintiff was noted to have limitations with regard to stooping,

---

[7]It appears that the Functional Capacity Examination was ordered by Michele Scott, NP, of Orthopedics East. (T. 351). The name of the physical therapist who signed the FCE report is, however, illegible. (T. 352-53). The administrative record does not reflect the nature of plaintiff's relationship to Orthopedics East, nor does it contain any physical therapy treatment records. Plaintiff did testify that she underwent some physical therapy in 2013 after she twisted her back. (T. 41).

bending, crouching, squatting and climbing ladders. *(Id.)*. The ALJ afforded "little weight" to the partial report of FCE, because "supporting documentation has not been provided, the degree of some of the limitations was not identified and no statement was made regarding the validity of the results." *(Id.)*.

The ALJ further addressed the opinions prepared by plaintiff's primary care physician, Yola Augustin, M.D. (T. 16, 569-71, 574-77, 581-82). In a March 21, 2014 Examination for Employability Assessment, Dr. Augustin indicated his practice "does not perform functional assessments." (T. 570). However, when prompted in the same document to describe plaintiff's limitations, Dr. Augustin opined that plaintiff was "unable to lift, bend, push, pull, handle 10 [pounds] or more." *(Id.)*. Dr. Augustin reflected virtually the same opinion of limitations in a June 12, 2014 Examination for Employability Assessment, reiterating that he did not formally assess functional limitations. (T. 577). Finally, Dr. Augustin prepared an April 9, 2015 Examination for Employability Assessment, declining to perform a formal assessment of plaintiff's functional limitations but describing plaintiff's limitations to include "no lifting, bending, nor carrying beyond 10 pounds. Avoid prolonged sitting." (T. 582).

The ALJ afforded Dr. Augustin's opinions "little weight," in light of the documents being "internally consistent." (T. 16). She further noted Dr. Augustin's opinions were inconsistent with the plaintiff's activities of daily living and her admitted level of functioning. *(Id.)*.

## C. Discussion

Plaintiff asserts that the ALJ improperly rejected portions of Dr. Lorensen's

opinion, and that the entirety of Dr. Lorensen's opinion should have been given significant weight, particularly with respect to the postural limitations.  (Pl's Br. at 11-12).  Plaintiff further argues that the ALJ substituted her own lay interpretation of the medical evidence in formulating the RFC.  (Pl's Br. at 12-13).

Although an "ALJ cannot arbitrarily substitute his own judgment for a competent medical opinion,"[8] there is no requirement that the ALJ pick one RFC and use that particular evaluation in its entirety. *See Matta v. Astrue*, 508 F. App'x. 53, 56 (2d Cir. 2013) (Although ALJ's conclusion did not perfectly correspond with any of the opinions of medical sources, ALJ was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole). There is no requirement that the ALJ accept every limitation in the opinion of a consultative examiner.  *See Pellam v. Astrue*, 508 F. App'x 87, 89 (2d Cir. 2013) (ALJ properly declined to credit certain conclusions in CE's opinion that were inconsistent with other evidence of record); *Walker v. Colvin,* No. 3:15-CV-465 (CFH), 2016 WL 4768806, at *10 (N.D.N.Y. Sept. 13, 2016) ("[A]n ALJ may properly 'credit those portions of a consultative examiner's opinion which the ALJ finds supported by substantial evidence of record and reject portions which are not so supported.' This is true even where the ALJ relies on a consultative examiner's examination findings, but rejects the consultative examiner's medical source statement setting forth 'moderate to severe limitations.'") (quoting *Viteritti v. Colvin,* No. 14-CV-6760 (DRH), 2016 WL 4385917, at *11 (E.D.N.Y. Aug. 17, 2016) and citing *Pellam,* 208 F. App'x. at 90)*; Cruz v.*

_____

[8] *Rosa v. Callahan,* 168 F.3d at 79 (citing *McBrayer v. Sec'y of Health and Human Servs.*, 712 F.2d 795, 799 (2d Cir. 1983)).

19

*Colvin*, No. 3:13-CV-723 (MAD/TWD), 2014 WL 4826684, at *14 (N.D.N.Y. Sept. 29, 2014) (An ALJ may credit some portion of a consultative opinion, while properly declining to credit those conclusions that are not supported by CE's own examination findings and inconsistent with other evidence of record).

Here, the ALJ's assessment of plaintiff's residual functional capacity is largely supported by Dr. Lorensen's opinion. In fact, the ALJ appears to have adopted most[9] of the functional limitations posed by Dr. Lorensen, with the relevant exceptions of climbing stairs/ramps and stooping. (T. 13, 319-24). While Dr. Lorensen opined that plaintiff should never engage in such postural activities, the RFC as determined by the ALJ is less restrictive and limits plaintiff to "occasionally" climbing stairs/ramps, and "occasionally" stooping. *(Id.)*.

Although Dr. Lorensen's MSS sets forth very restrictive limits on plaintiff's ability to climb stairs/ramps or stoop, these limitations are contradicted by other evidence of record, including Dr. Lorensen's examination findings wherein she opined that plaintiff had "moderate restrictions" to postural activities such as bending, reaching, and squatting. (T. 317). Dr. Lorensen also noted that plaintiff's admitted activities of daily living included cleaning, doing the laundry, and shopping. (T. 315). As the ALJ noted, plaintiff testified that she was able to bend at the waist five times a day, up to a 90 degree angle. (T. 15-16, 63-64). Plaintiff admitted in her Function Report that she was able to climb stairs two to three times per day, sweep, and empty

---

[9]The court notes that the ALJ did adopt a more restrictive functional limitation ("frequently") than that opined by Dr. Lorensen ("continuously") for handling, fingering, and feeling. (T. 13, 321).

the litter box. (T. 215, 220). Given these findings, the ALJ properly weighed Dr. Lorensen's opinion in accepting the portions that were supported by substantial evidence of record, and rejecting that which was contradicted by plaintiff's activities of daily living, plaintiff's testimony, and the medical evidence of record. "[U]nder the substantial evidence standard of review, it is not enough for plaintiff to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in the record could support her position. Plaintiff must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in record." *McAllister v. Colvin*, No. 3:14-CV-01488 (TWD), 2016 WL 1122059, at *12 (N.D.N.Y. Mar. 22, 2016) (citing *Brault v. Social Sec. Admin., Com'r*, 683 F.3d 443, 448 (2d Cir. 2012)).

Plaintiff's corresponding argument that the ALJ substituted her own medical opinion in finding that plaintiff could occasionally climb stairs/ramps and stoop is also unavailing. (Pl.'s Br. at 12-13). The ALJ was "entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole." *Matta*, 508 F. App'x. at 53 (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971) ("We therefore are presented with the not uncommon situation of conflicting medical evidence. The trier of fact has the duty to resolve that conflict.")). [T]he ALJ's resolving . . . conflicts in the medical evidence is not interpreting raw medical data or substituting his own lay opinion for that of a medical professional." *Terri G. v. Comm'r of Soc. Sec.*, No. 3:18-CV-0066 (CFH), 2019 WL 1318074, at *9 (N.D.N.Y. Mar. 22, 2019)(citing *Hanson v. Comm'r of Soc. Sec.,* No. 15-CV-0150 (GTS/WBC), 2016 WL 3960486, at *9 (N.D.N.Y. June 29, 2016)(other citations omitted)). "Where there is a

genuine conflict in the medical evidence we must defer to the ALJ's resolution of that conflict." *Hanson,* 2016 WL 3960486, at *9 (citing *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012) ("In our review, we defer to the Commissioner's resolution of conflicting evidence.")). Here, the ALJ's analysis and resulting RFC indicate sufficient consideration of Dr. Lorensen's opinion, and the specific reasons for the weight afforded to the consultative examiner's findings are supported by the objective evidence of record.

The court further notes that any error by the ALJ related to the disputed limitations for stooping and climbing stairs would be harmless to the extent these limitations did not impact plaintiff's ability to perform jobs identified by the VE and ALJ. Here, two of the jobs that the VE found in significant numbers in the national economy, shipping-and-receiving weigher and counter clerk, do not require stooping or climbing stairs. Dictionary of Occupational Titles, 222.387-074 Shipping-and-Receiving Weigher, 1991 WL 672108; 249.366-010 Counter Clerk, 1991 WL 672323. "Thus, the dispute has no practical impact." *Daniels v. Berryhill*, 270 F. Supp.3d 764, 777 (S.D.N.Y. 2017) (Plaintiff's argument that the ALJ improperly weighed the consultative examiner's opinion with respect to stooping found unavailing where one of the jobs that the VE found in significant numbers in the national economy "specifically required no stooping").

Plaintiff further argues that the ALJ's error in determining plaintiff's RFC is compounded by the ALJ's failure to comply with the Treating Physician Rule. (Pl.'s Br. at 13). "Generally, an ALJ is to give the opinion of a treating physician controlling

weight as to the nature and severity of a claimant's impairments as long as the opinion 'is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record.'" *Zukowski v. Berryhill*, No. 8:16-CV-1537 (CFH), 2018 WL 1325875, at *5 (N.D.N.Y. Mar. 13, 2018) (quoting *Foxman v. Barnhart*, 157 F. App'x 344, 346 (2d Cir. 2005) (internal citations omitted). The opinion of the treating physician is not afforded controlling weight where " . . . the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts." *Kennedy v. Astrue*, 343 F. App'x 719, 721 (2d Cir. 2009) (quoting *Halloran*, 362 F.3d at 32).

Where controlling weight is not afforded, an ALJ is to consider certain "factors" in assessing the weight to give to the treating physician's opinion, including: (1) "the frequency of the examination and the length, nature and extent of the treatment relationship"; (2) "the evidence in support of the treating physician's opinion"; (3) "the consistency of the opinion with the record as a whole"; (4) "whether the opinion is from a specialist"; and (5) "other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion." *Halloran*, 362 F.3d at 32 (quoting 20 C.F.R. § 404.1527(d)(4)). However, an ALJ is not required to list and discuss explicitly each factor or explain the weight given, and courts generally will not remand where "the substance of the treating physician rule was not traversed." *Kennedy*, 343 F. App'x at 721 (quoting *Halloran*, 362 F.3d at 32). Moreover, remand for reconsideration may be unnecessary where "application of the

correct legal principles to the record could lead [only to the same] conclusion." *Brogan-Dawley v. Astrue*, 484 F. App'x 632, 633 (2d Cir. 2012) (summary order) (quoting *Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010)); *Halloran*, 362 F.3d at 33.

Admittedly, ALJ Smith did not specifically discuss her application of the Treating Physician Rule in her examination of Dr. Augustin's opinions, nor did she explicitly reference the applicability of each factor. Nevertheless, the court is "able to look to other portions of the ALJ's decision and to clearly credible evidence in finding that [her] determination was supported by substantial evidence." *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) (quoting *Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir. 1982)); *Otrs v. Astrue*, No. 5:11-512, 2012 WL 6803588, at *11 (N.D.N.Y. Nov. 14, 2012) ("While [the hearing officer] could have discussed the factors listed in the regulations neatly and in more detail, this shortcoming does not amount to reversible error because the rationale for her decision is clear and her ultimate determination is supported by substantial evidence.")).

Here, the ALJ addressed the extent to which Dr. Augustin's opinions were inconsistent with plaintiff's activities of daily living and admitted level of functioning. (T. 16). In particular, Dr. Augustin opined that plaintiff could only carry up to ten pounds, however plaintiff represented that she could carry a maximum of twenty pounds. (T. 43, 219, 577, 582). Dr. Augustin also opined plaintiff was unable to bend. (T. 570, 582). As previously discussed, plaintiff's testimony, her noted activities of daily living and Dr. Lorensen's findings upon examination contradict such a limitation. (T. 63-64, 215, 317).

Moreover, the ALJ's decision discussed Dr. Augustin treatment records, properly concluding that plaintiff's history of treatment did not reflect a basis for Dr. Augustin's restrictive limitations.[10] (T. 14-15, 564-67, 584-612) (4/19/15 - "Back pain. . . is stable. It occurs intermittently...[plaintiff] has a job plus form." Mild pain noted with thoracic range of motion. Moderate pain noted with lumbar range of motion. Negative Straight Leg Raise Test.) (7/9/15 - "[Plaintiff] was babysitting grandkids recently." Muscle spasm noted at lumbar spine; mild pain with range of motion. Plaintiff complained of worsening shortness of breath when she bent over to tie her shoe laces, attributed to acute bronchitis.) (9/11/15 - Mild lumbar pain with range of motion. Lumbar spasm noted. Right and left buttock painless. Normal Straight Leg Raise Test.) (3/3/16 - "Back pain . . . severity level is moderate . . . occurs persistently." Mild pain with range of motion noted at lumbar and thoracic spine. Normal Straight Leg Raise Test.).

As demonstrated above, the ALJ resolved conflicts between the various medical opinions by assigning the greatest weight to those opinions that she deemed most consistent with plaintiff's overall treatment record and activities. She also explained the reasons for discounting portions of those medical opinions, including the objective medical evidence in the record. In light of the ALJ's detailed analysis of plaintiff's relevant medical history, the opinion evidence, and plaintiff's testimony, this court concludes that the ALJ made a determination that is consistent with the record as a

---

[10]According to Dr. Augustin's treatment notes contained in the administrative record, plaintiff presented to her primary care physician five times over the course of two years; from 3/6/2014 to 3/3/2016. The record further reflects plaintiff presented for back pain at only two out of the five visits; the majority of her complaints revolved around asthma and bronchitis related issues. (T. 564-67, 584-612).

whole. Accordingly, her RFC determination was supported by substantial evidence.

Finally, plaintiff argues that the ALJ's Step Five determination was not supported by substantial evidence. (Pl.'s Br. at 15). In order to determine whether there were jobs that existed in significant numbers in the national economy that plaintiff could perform, the ALJ asked the VE a final hypothetical question that mirrored her ultimate determination of plaintiff's RFC. (T. 58-59). The VE testified that, based on her professional experience, there were a series of jobs available in the national economy that an individual with that RFC would be able to perform. (T. 59-60). The ALJ relied on this testimony at step five. (T. 17-18). Because this court has found that the ALJ's RFC determination was supported by substantial evidence, it also finds that the ALJ's determination at step five, and the ultimate determination of disability, were similarly supported by substantial evidence.

WHEREFORE, based on the findings above, it is

ORDERED, that the Commissioner's decision is AFFIRMED, and plaintiff's complaint is DISMISSED, and it is further

ORDERED, that judgment be entered for the DEFENDANT.


Dated: April 8, 2019

Hon. Andrew T. Baxter
U.S. Magistrate Judge

26